UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALFRED DECLOUET** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1287** |
| **MARCUS MYERS** | **SECTION: "G"(1)** |

### REPORT AND RECOMMENDATION

Petitioner, Alfred Declouet, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

On January 23, 2009, petitioner was convicted of three counts of armed robbery under Louisiana law.[1] On March 19, 2009, he was sentenced on each count to a term of twenty-two years imprisonment.[2] On September 24, 2009, he then pleaded guilty to being a second offender as to the first count and was resentenced as such on that count to a concurrent term of forty-nine years, six months without benefit of parole, probation, or suspension of sentence.[3] On October 12, 2010, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions but vacated his sentences and remanded the matter for resentencing.[4] On remand, on December 2, 2010, the

---

[1] State Rec., Vol. 3 of 8, transcript of January 23, 2009, p. 129; State Rec., Vol. 1 of 8, minute entry dated January 23, 2009; State Rec., Vol. 1 of 8, jury verdict form.
[2] State Rec., Vol. 1 of 8, transcript of March 19, 2009; State Rec., Vol. 1 of 8, minute entry dated March 19, 2009.
[3] State v. Declouet, No. 07-1540, 2009 WL 6092761 (La. Dist. Ct. Sept. 24, 2009); State Rec., Vol. 1 of 8.
[4] State v. Declouet, 52 So. 3d 89 (La. App. 5th Cir. 2010); State Rec., Vol. 1 of 8. The Court of Appeals held:

> Our review indicates that Defendant's sentences for armed robbery are considered indeterminate. Armed robbery with a firearm, LSA-R.S. 14:64.3, is a more serious form of armed robbery for which the penalty range is effectively 15 to 104 years. State v. Hall, 43,125, p. 6 (La.App. 2 Cir. 6/4/08), 986 So.2d 863, 868, writ denied, 08-1511 (La. 3/13/09), 5 So.3d 116. LSA-

district court resentenced petitioner on each of the three counts of armed robbery to a concurrent term of twenty-two years imprisonment and "ordered that the Multiple Bill plea and sentence of 09/24/2009 stands."[5] The Louisiana Supreme Court then denied his related writ application on April 8, 2011.[6]

On May 7, 2012, petitioner filed a *pro se* application for post-conviction relief with the state district court.[7] That application was denied on July 30, 2012.[8] The Louisiana Fifth Circuit Court of Appeal denied his related writ application on October 18, 2012,[9] and subsequently refused to consider his request for rehearing.[10] The Louisiana Supreme Court then likewise denied relief on May 17, 2013.[11]

---

R.S. 14:64.3(A) provides for an additional penalty when the dangerous weapon used in the commission of an armed robbery is a firearm. …
   … [W]e find that the State intended to utilize the provisions of LSA-R.S. 14:64.3 and that the sentences are indeterminate because the trial judge did not state whether the sentences included the firearm enhancement.
   … [W]e find that the sentences imposed by the court are indeterminate and constitute error patent, and that the sentences are hereby vacated and remanded for resentencing according to law for clarification of whether Defendant's sentences include any additional punishment under LSA-R.S. 14:64.3. See State v. Price, 04-812, p. 10 (La.App. 5 Cir. 3/1/05), 909 So.2d 612, 618.

Id. at 108-09 (footnote omitted).
[5] State v. Declouet, No. 07-1540, 2010 WL 11713935 (La. Dist. Ct. Dec. 2, 2010); State Rec., Vol. 1 of 8.
[6] State v. Declouet, 61 So. 3d 681 (La. 2011); State Rec., Vol. 1 of 8.
[7] State Rec., Vol. 1 of 8. Federal habeas courts apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to *pro se* filings herein, the Court has simply used the signature dates of the pleadings as their filing dates, in that the pleadings were obviously placed in the mail no earlier than the dates on which they were signed. See United States v. Minor, 582 F. App'x 315, 316 (5th Cir. 2014); Estes v. Boutté, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), adopted, 2020 WL 1984331 (E.D. La. Apr. 27, 2020); Crochet v. Goodwin, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n.10 (E.D. La. Oct. 8, 2014); Thornton v. Terrell, Civ. Action No. 09-1631, 2009 WL 4855743, at *1 n.1 (E.D. La. Dec. 4, 2009).
[8] State Rec., Vol. 2 of 8, Order dated July 30, 2012.
[9] State v. Declouet, No. 12-KH-674 (La. App. 5th Cir. Oct. 18, 2012); State Rec., Vol. 2 of 8.
[10] State v. Declouet, No. 12-KH-674 (La. App. 5th Cir. Nov. 14, 2012); State Rec., Vol. 8 of 8.
[11] State ex rel. Declouet v. State, 117 So. 3d 1261 (La. 2013); State Rec., Vol. 2 of 8.

On October 26, 2015, petitioner, through counsel, filed another application for post-conviction relief with the state district court.[12] The court denied that application on December 10, 2015,[13] and then also denied his motion for reconsideration on January 12, 2016.[14] His related writ application was thereafter denied by the Louisiana Fifth Circuit Court of Appeal on March 17, 2016.[15]

On April 3, 2018, petitioner filed with the state district court a *pro se* "Motion for New Trial for Newly Discovered Evidence and/or Application for Out-of-Time Post Conviction Application,"[16] which was denied on April 26, 2018.[17] The Louisiana Fifth Circuit Court of Appeal denied his related writ application on September 25, 2018.[18] The Louisiana Supreme Court then likewise denied his relief on September 17, 2019,[19] and, on February 18, 2020, refused to consider his application for reconsideration.[20]

In the meantime, on February 13, 2020, petitioner filed a motion to correct an illegal sentence with the state district court.[21] That motion was denied on May 22, 2020.[22]

While those state court proceedings were ongoing, petitioner filed the instant federal application seeking habeas corpus relief on March 10, 2020.[23] The state has filed a response

---

[12] State Rec., Vol. 2 of 8.
[13] State Rec., Vol. 3 of 8, Order dated December 10, 2015.
[14] State v. Declouet, No. 07-1540, 2016 WL 11710412 (La. Dist. Ct. Jan. 12, 2016); State Rec., Vol. 3 of 8.
[15] State v. Declouet, No. 16-KH-89 (La. App. 5th Cir. Mar. 17, 2016); State Rec., Vol. 3 of 8.
[16] State Rec., Vol. 3 of 8.
[17] State v. Declouet, No. 07-1540, 2018 WL 11248492 (La. Dist. Ct. Apr. 26, 2018); State Rec., Vol. 3 of 8.
[18] State *ex rel.* Declouet v. State, No. 18-KH-369 (La. App. 5th Cir. Sept. 25, 2018); State Rec., Vol. 3 of 8.
[19] State *ex rel.* Declouet v. State, 278 So. 3d 963 (La. 2019); State Rec., Vol. 3 of 8.
[20] State *ex rel.* Declouet v. State, No. 2018-KH-1827 (La. Feb. 18, 2020); State Rec., Vol. 3 of 8.
[21] State Rec., Vol. 3 of 8.
[22] State Rec., Vol. 3 of 8, Order dated May 22, 2020.
[23] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner has declared under penalty of perjury that his federal application was placed in the prison mailing system on March 10, 2020. Rec. Doc. 1, p. 15.

opposing the application.[24]  At petitioner's request, he was granted until April 30, 2021, to file a reply to that response;[25] however, no reply was ever filed.

The state argues, *inter alia*, that petitioner's federal application is untimely.  For the following reasons, the state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

[24] Rec. Doc. 12.
[25] Rec. Doc. 17.

Subsections B and C of 28 U.S.C. § 2244(d)(1) clearly do not apply in the instant case because petitioner does not allege the existence of either a state-created impediment or a newly recognized constitutional right. As to the remaining subsections, the state argues that Subsection A applies,[26] while petitioner argues that Subsection D is instead applicable.[27] Ultimately, however, that disagreement is of no consequence – petitioner's application is untimely regardless.

### **Subsection A**

Regarding Subsection A, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's direct-review writ application on April 8, 2011. Therefore, his state criminal judgment became final for AEDPA purposes ninety days later on **July 7, 2011**. His federal limitations period then commenced on that date and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

---

[26] Rec. Doc. 12, pp. 10-20.
[27] See Rec. Doc. 1, p. 13.

No fewer than three hundred four (304) days of petitioner's federal limitations period elapsed before he first tolled the period on May 7, 2012. Although that application was denied by the state district court on July 30, 2012,[28] a state post-conviction application nevertheless remains "pending" for tolling purposes while a petitioner continues to seek timely review of a denial at the higher levels of the state court system. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-72 (5th Cir. 2004). Regarding petitioner's related post-conviction writ applications, the state apparently concedes in its response that petitioner sought review from the Louisiana Fifth Circuit Court of Appeal in a timely manner.[29] However, the state argues that, after the Court of Appeal denied relief, petitioner's request for further review by the Louisiana Supreme Court was untimely. The state is correct.

Under the applicable state court rules, a petitioner has thirty (30) days to file a writ application with the Louisiana Supreme Court when seeking review of a Louisiana intermediate appellate court's denial of relief. Louisiana Supreme Court Rule X, § 5(a). Because the Louisiana Fifth Circuit Court of Appeal denied petitioner relief on October 18, 2012,[30] he had only until November 19, 2012, to seek further review by the Louisiana Supreme Court.[31] However, his related writ application was not filed with the Louisiana Supreme Court until on or after December 13, 2012.[32] Therefore, it was untimely.[33] Accordingly, petitioner's post-conviction application

---

[28] State Rec., Vol. 2 of 8, Order dated July 30, 2012.
[29] See Rec. Doc. 12, p. 11.
[30] State v. Declouet, No. 12-KH-674 (La. App. 5th Cir. Oct. 18, 2012); State Rec., Vol. 2 of 8.
[31] Because the thirtieth day of the period fell on a Saturday, petitioner had until Monday, November 19, 2012, to file a writ application with the Louisiana Supreme Court. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.
[32] Petitioner self-dated the Supreme Court of Louisiana Writ Application Filing Sheet which accompanied his application "12/13/2012." State Rec., Vol. 8 of 8.
[33] The Court is aware that, after the Louisiana Fifth Circuit Court of Appeal denied relief on October 18, 2012, petitioner filed an "Application for Rehearing" with that court. State Rec., Vol. 7 of 8. However, the filing of that application for rehearing did **not** extend petitioner's deadline for seeking review by the Louisiana Supreme Court. On the contrary, the applicable court rules provide that the filing of an application for rehearing extends the Louisiana

ceased to be pending – and statutory tolling therefore ended – on **November 19, 2012**. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending for tolling purposes when the time for seeking supervisory review expires).

When petitioner's one-year federal limitations period then resumed running at that point, three hundred four (304) days had already elapsed, leaving him only sixty-one (61) days remaining. Accordingly, he had only until **January 22, 2013**, either to again toll the limitations period or to file his federal application.[34]

Petitioner had no other properly filed applications for post-conviction or other collateral review pending before the state courts at any time on or before January 22, 2013. Therefore, he clearly is not entitled to further statutory tolling.[35]

---

Supreme Court's deadline **only** "in those instances where a rehearing is allowed." But a rehearing is not available where, as here, the Court of Appeal has simply denied a writ application. See, e.g., State v. Crandell, 924 So. 2d 122, 124 (La. 2006) ("[The] Uniform Rule of the Courts of Appeal … do not provide for a rehearing from a denial of an application for supervisory writs."). In fact, with respect to petitioner's application, the Court of Appeal expressly held: "**[S]ince there is no rehearing from the denial of a writ**, this matter is **refused** according to URCA Rules 2-18.7 and 4.9." State v. Declouet, No. 12-KH-674 (La. App. 5th Cir. Nov. 14, 2012) (emphasis added); State Rec., Vol. 8 of 8. As a result, petitioner's thirty-day deadline for taking writs to the Louisiana Supreme Court "was not extended by [his] application for rehearing in the court of appeal because it was not an instance where a rehearing was allowed." Crandell, 924 So. 2d at 124.

[34] Because the three hundred sixty-fifth day of the limitations period fell on a Saturday, and because the following Monday was a federal holiday, petitioner's deadline was extended until Tuesday, January 22, 2013. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

[35] The petitioner's only state filing during that period was his untimely writ application filed with the Louisiana Supreme Court on November 13, 2019. However, "it is abundantly clear that a federal habeas petitioner receives no tolling credit whatsoever for an untimely Louisiana Supreme Court writ application." Joseph v. Vannoy, Civ. Action No. 16-0546, 2016 WL 4433640, at *4 (E.D. La. June 10, 2016) (citing Williams v. Cain, 217 F.3d 303 (5th Cir. 2000), and other cases), adopted, 2016 WL 4419004 (E.D. La. Aug. 19, 2016).

Further, although he sought additional relief in the state courts beginning in 2015, that is immaterial. Pleadings filed in the state courts after the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), aff'd, 253 F.3d 702 (5th Cir. 2001); Williams

The Court next considers equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "equitable tolling is unavailable in most cases …." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence whatsoever demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by asserting a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In Perkins, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup[ v. Delo, 513 U.S. 298 (1995)] and House[ v. Bell, 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations." Perkins, 569 U.S. at 386. Because petitioner

---

v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). This is so because once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

8

contends that he is actually innocent in the instant case, the Court will consider that contention as an invocation of the Perkins rule.

In assessing a claim of actual innocence, a federal habeas court normally first examines the evidence presented at trial and on which the petitioner's convictions are based. See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).

Here, petitioner was convicted of armed robbery. Under Louisiana law, "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. Ann. § 14:64(a). On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the evidence of that crime in this case as follows:

> On August 26, 2006, Gary Woods and Michael Declouet, Defendant's cousin, were at a house located at 1331 Port Street when they received a call from Defendant. Defendant told Gary and Michael that he had a job for them, and that he would pay them each $1,500 if they helped him rob a recording studio called Studio 440. According to Defendant, the studio was being targeted by an acquaintance of Defendant's who wanted to open his own recording studio and eliminate the competition. According to the plan developed by Defendant, Michael and Defendant were supposed to enter Studio 440 armed with guns and remove the recording equipment. In order to avoid suspicion in the event they were stopped by the police, Defendant designated Gary, who had a driver's license and insurance, to be the driver.
> When the three perpetrators arrived at Studio 440, Michael and Defendant exited the vehicle and headed toward the studio. Shortly thereafter, they saw a white Chevy Tahoe pull up in front of the studio. The driver of the Tahoe exited the vehicle and entered Studio 440. At this point, Michael and Defendant advised Gary that they would need him to accompany them inside because they did not know how many people were in the studio. Gary, Michael and Defendant approached the side door of the studio and knocked.
> Because Defendant had been to the studio the night before under the pretext of inquiring about studio time, the three perpetrators were let into the studio. There

were three other people inside when Defendant, Michael and Gary arrived, including the owner of the studio, Christopher Villagran, and two of his clients, Kernel Reynolds and Cory Singer. Defendant and Mr. Villagran had a short conversation about studio time, and Defendant, Michael and Gary subsequently moved towards the door as if they were going to leave the studio. At this point, Defendant and Michael pulled guns on the victims.

Mr. Reynolds tried to grab the gun from Michael and a struggle ensued. Defendant, Michael and Gary were able to subdue Mr. Reynolds, and Michael retrieved a gun that was in Mr. Singer's possession and gave it to Gary. The three victims were searched, stripped of their cell phones and cash, and ordered to get down on the ground. Mr. Singer was ordered to bind Mr. Villagran and Mr. Reynolds with duct tape. Afterwards, one of the perpetrators taped Mr. Singer's hands behind his back. All three perpetrators wore gloves during the robbery.

After the victims were bound and placed in a recording booth, the perpetrators put the recording equipment into large, black garbage bags. The perpetrators asked the victims who owned the Chevy Tahoe and, after Mr. Singer said it belonged to him, forced Mr. Singer to give them his keys. The perpetrators loaded the equipment into the Chevy Tahoe and left the studio. Shortly thereafter, Mr. Villagran called the police.

Sergeant Larry Dyess of the Jefferson Parish Sheriff's Office, Robbery Division, participated in the investigation of the robbery at Studio 440. When the officers arrived, the victims provided details about the robbery and gave descriptions of the perpetrators. During the initial victim interviews, Mr. Villagran and Mr. Singer described one of the perpetrators as having three gold teeth and being the tallest of the three. Mr. Villagran also described the tallest perpetrator, the one who initially asked about recording time, as the ring-leader of the group. At trial, Michael confirmed that Defendant was the tallest of the three perpetrators and the only one with gold teeth.

Approximately four months after the robbery, the police presented photographic lineups to Mr. Villagran, Mr. Reynolds and Mr. Singer. Mr. Villagran and Mr. Reynolds were unable to identify anyone from the lineups presented to them. Mr. Singer identified Defendant, Michael Declouet and Gary Woods as the three perpetrators of the Studio 440 robbery. Mr. Singer also identified Defendant as the tall perpetrator with the gold teeth. Mr. Singer testified at trial that he was one hundred percent certain that the people he identified in the photographic lineups were the people who participated in the robbery.

After he presented the photographic lineup to Mr. Singer, Sergeant Dyess obtained arrest warrants for Defendant, Michael Declouet and Gary Woods in connection with the Studio 440 robbery. Defendant was ultimately interviewed by Sergeant Dyess and Detective David Mascaro, the officer investigating an armed robbery at Auto Zone in which Defendant had also been developed as a suspect, at the detective bureau. Prior to the interview, Sergeant Dyess read Defendant his rights and Defendant signed a Rights of Arrestee or Suspects Form.

      Michael Declouet and Gary Woods ultimately pled guilty in federal court to conspiracy to interfere with commerce by threats of violence, a HOBBS Act violation, in connection with the robbery of Studio 440 and a number of other robberies. Both were incarcerated in federal prison at the time Defendant proceeded to trial. Michael Declouet was serving a sentence of 20 years imprisonment and Gary Woods had been sentenced to 18 years.[36]

To establish a viable "actual innocence" claim, petitioner must present the Court with new evidence of his innocence – and that new evidence must be particularly compelling. Indeed, the United States Fifth Circuit Court of Appeals has explained:

> This exception's demanding standard requires evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. The standard is seldom met.
>     An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Therefore, a credible claim must be supported by new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence – both the evidence presented at trial and that newly discovered – no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

Floyd v. Vannoy, 894 F.3d 143, 154-55 (5th Cir. 2018) (citations, quotation marks, and brackets omitted). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

Here, petitioner's "new evidence" consists of recanting affidavits executed by Michael Declouet and Corey Singer. In Michael Declouet's affidavit, he stated:

> The testimony I gave at the trial in State of Louisiana versus Alfred Declouet, No. 2009-KA-1046, in the 24th Judicial District Court for the Parish of Jefferson concerning the robbery of Studio 440 was coerced based on

---

[36] State v. Declouet, 52 So. 3d 89, 94-95 (La. App. 5th Cir. 2010); State Rec., Vol. 1 of 8.

11

misrepresentations given to me by State agents. Specifically, I was told that the defendant, Mr. Alfred Declouet, named me as a perpetrator of Studio 440, and based on this information I erroneously named Mr. Alfred Declouet as an offender in the robbery of Studio 440. To my knowledge, Mr. Alfred Declouet did not take part in, or was present during the robbery of Studio 440.[37]

In Corey Singer's affidavit, he stated:

On the date of August 28, 2006, an incident occurred which lead to the arrest of Alfred Declouet. I testified to the fact that Alfred Declourt was one of the robbers. That is not a fact and the statement is not true. I identified Alfred Declouet after Mr. Villagran and Mr. Reynolds failed to say it was Alfred Declouet. I was mad that my truck was taken during the robbery.

When the officers arrived, I was providing details about the robbery and I gave descriptions of the perpetrators. During the initial interviews, I described one of the perpetrators as having three gold teeth and being the tallest of the three. Mr. Villagran told me, the tallest perpetrator, was the one who initially asked about recording time, he was the ring-leader of the group.

Months after the robbery, the police presented photographic lineups to me. I identified Alfred Declouet as one of the three perpetrators of the Studio 440 robbery, because it was rumored in the neighborhood. I also identified Alfred Declouet as the tallest perpetrator with the gold teeth. I testified at his trial; that I was one hundred percent certain that the people I identified in the photographic lineups were the people who participated in the robbery. This testimony was not truthful. Alfred Declouet was not part of the robbery.[38]

In the state post-conviction proceedings, the Louisiana Fifth Circuit Court of Appeal expressly found that those affidavits "lack[ed] credibility."[39] The undersigned agrees.

As an initial matter, it must be noted that recantations are generally looked upon with the "utmost suspicion." United States v. Smith, 433 F.2d 149, 150 (5th Cir. 1970); accord Summers v. Dretke, 431 F.3d 861, 872 (5th Cir. 2005) ("This circuit has long viewed recanting affidavits with extreme suspicion." (quotation marks omitted)). Such suspicion is particularly justified here. Michael Declouet's affidavit is suspect both because he is petitioner's cousin and was himself

---

[37] State Rec., Vol. 8 of 8, affidavit of Michael Declouet.
[38] State Rec., Vol. 8 of 8, Affidavit of Corey Singer.
[39] State ex rel. Declouet v. State, No. 18-KH-369 (La. App. 5th Cir. Sept. 25, 2018); State Rec., Vol. 3 of 8.

incarcerated already at the time he executed the affidavit. See, e.g., Jones v. Taylor, 763 F.3d 1242, 1249 (9th Cir. 2014) (noting that the weight and credibility of recantations are reduced when they are made by family members); Milton v. Secretary, Department of Corrections, 347 F. App'x 528, 531 (11th Cir. 2009) (finding that the reliability of affidavits executed by friends or fellow inmates is suspect); Williams v. Berghuis, Case No. 15-cv-10100, 2015 WL 6449331, at *6 (E.D. Mich. Oct. 26, 2015) ("Jailhouse recantations usually lack any meaningful indicia of reliability and are properly regarded as highly suspicious." (quotation marks omitted)). Considering that he was already in prison, he was able to help petitioner, his relative, by providing the affidavit while seemingly exposing himself to few adverse consequences by doing so. In such circumstances, a recantation is of little probative value. See, e.g., Drew v. Scott, 28 F.3d 460, 463 (5th Cir. 1994) (rejecting actual innocence claim predicated on co-defendant's statements made after he had nothing to lose by exculpating defendant); Wiley v. Cain, Civ. Action No. 16-3408, 2017 WL 8785559, at *10 (E.D. La. Oct. 17, 2017) (finding that "a co-defendant's recantation is obviously of little probative value" when it comes "at little or no cost" to the affiant), adopted, 2018 WL 1726256 (E.D. La. Apr. 10, 2018); Gibson v. Vaughn, Civ. Action No. 3:08CV181, 2009 WL 577467, at *3 (E.D. Va. Mar. 5, 2009) ("[R]ecantation testimony, particularly by a codefendant who now has nothing to lose by recanting, is not reliable evidence of innocence."), appeal dismissed, 340 F. App'x 172 (4th Cir. 2009).

Further, the two affidavits were not executed until **many years** after petitioner was convicted in 2009 – Michael Declouet's affidavit was executed in 2014, while Corey Singer's affidavit was executed even later in 2017. Such long delays cast doubt on the validity of the recantations. See, e.g., Olson v. United States, 989 F.2d 229, 232 (7th Cir. 1993) (finding

recantation that occurred more than four years after trial to be "dubious"); see also Strayhorn v. Booker, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (noting that "[l]ong-delayed affidavits" are "treated with a fair degree of skepticism").

In the end, it simply cannot be said that these suspect, long-delayed affidavits are so compelling that no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt even in light of the recantations. For these reasons, the undersigned finds that petitioner has not met "the threshold requirement" for McQuiggin to apply. See McQuiggin, 569 U.S. at 386. Accordingly, McQuiggin does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than **January 22, 2013**, in order to be timely under Subsection A. His application was not filed until on or after **March 10, 2020**, and, therefore, it is untimely under that provision.

## **Subsection D**

As noted, petitioner suggests that it is Subsection D which applies in his case. But, even if so, he still fares no better. It is true that Subsection D delays the commencement of the one-year federal limitations period until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). However, petitioner clearly did not file for federal relief within one year of his discovery of the latest factual predicate which could possibly apply in this case: Singer's 2017 recantation.

14

Petitioner himself has acknowledged that he learned of Singer's recantation on **May 22, 2017**.[40] Moreover, even if it is assumed that he could not have learned of that recantation any earlier, the statute of limitations still would have commenced under Subsection D on that date and then would have expired one year later on **May 22, 2018**, unless tolling was available.

Statutory tolling under 28 U.S.C. § 2244(d)(2) is clearly unavailable. The only state court filings during that one-year period related to petitioner's "Motion for New Trial for Newly Discovered Evidence and/or Application for Out-of-Time Post Conviction Application."[41] However, that application was ultimately deemed untimely under state law, with the Louisiana Supreme Court unequivocally holding: "The application was not timely filed in the district court, and applicant fails to carry his burden to show that an exception applies. La.C.Cr.P. art. 930.8; State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189."[42] That ruling essentially dooms any bid for statutory tolling. The United States Supreme Court has clearly held that because time limits are conditions of filing, **an untimely state application simply cannot be deemed "properly filed" for the purposes of § 2244(d)(2)**. Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). Simply put: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Id. at 414 (quotation marks and brackets omitted).

As already explained herein, petitioner also has not established that he is eligible for equitable tolling. Further, even if he attempts to argue in any objections to this Report and

---

[40] State Rec., Vol. 3 of 8, petitioner's Louisiana Supreme Court writ application in Case No. 20-KH-01827, p. 10 ("On 22 May 2017, Alfred Declouet was contacted by New Orleans attorney Lionel Lon Burns stating that his services had been retained by Mr. Singer … to put together an affidavit that irrefutably states that Mr. Singer committed perjury and was not correct in his identification of Alfred Declouet.").
[41] State Rec., Vol. 3 of 8.
[42] State ex rel. Declouet v. State, 278 So. 3d 963 (La. 2019); State Rec., Vol. 3 of 8.

Recommendation that equitable tolling is justified due to the fact that he was unaware of Singer's recantation until 2017, that argument would be a non-starter.

As already noted, equitable tolling is warranted **only** if "some extraordinary circumstance stood in [the petitioner's] way and **prevented** timely filing." Holland v. Florida, 560 U.S. 631, 645 (2010) (emphasis added). The belated discovery of the recanting affidavit in no way **prevented** petitioner from timely seeking federal relief under Subsection D. On the contrary, he could have filed for federal relief at any time within one year following his discovery of the recantation simply "by filing a 'protective' petition in federal court and asking the federal court to stay and obey the federal habeas proceedings until state remedies are exhausted." Pace, 544 U.S. at 416. But he did not avail himself of that option, and the United States Fifth Circuit Court of Appeals has stated that where a petitioner "could have elected to file a protective federal petition and request a stay, we hold that he was not **prevented** from asserting his rights, and that **equitable tolling does not apply**." Madden v. Thaler, 521 F. App'x 316, 323 (5th Cir. 2013); accord Trice v. Vannoy, Civ. Action No. 19-10787, 2020 WL 5646936, at *9 (E.D. La. Aug. 7, 2020), adopted, 2020 WL 5645922 (E.D. La. Sept. 22, 2020), appeal dismissed, No. 20-30688, 2021 WL 5399884 (5th Cir. July 23, 2021); Joyner v. Kent, Civ. Action No. 16-16595, 2019 WL 3755973, at *6 (E.D. La. June 20, 2019), adopted, 2019 WL 3753693 (E.D. La. Aug. 8, 2019). Even if he was unaware that the option of filing a protective petition was available, the result is the same, because "a petitioner's ignorance or mistake is insufficient to warrant equitable tolling." Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002); accord Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002) ("[N]either 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling.").

Lastly, for the reasons already explained in detail *supra*, petitioner has not made a credible showing of "actual innocence" so as to overcome the federal limitations period.

Accordingly, even if the commencement of the statute of limitations was delayed pursuant to 28 U.S.C. § 2244(d)(1) (D), petitioner's federal application for habeas corpus relief still had to be filed no later than **May 22, 2018**, in order to be timely. Because his application was not filed until on or after **March 10, 2020**, it is untimely even under that provision.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application filed by Alfred Declouet seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   29th   day of November, 2021.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**